UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MICHELE HUNT and
EDWIN HUNT                                                                                                PLAINTIFFS

v.                                          No. 5:21-CV-05100

THE INTERNATIONAL ASSOCIATION
OF LIONS CLUBS, INC.                                                                                      DEFENDANT

**OPINION AND ORDER**

    Before the Court is Defendant The International Association of Lions Clubs, Inc.'s motion to dismiss (Doc. 11) and brief in support (Doc. 12).  Plaintiffs Michele and Edwin Hunt filed a response in opposition (Doc. 14), and Defendant filed a reply (Doc. 17) with leave of Court.  The motion will be granted.

**I.      Background**

    On August 31, 2019, Ms. Hunt attended Defendant's annual arts and crafts fair ("the Fair"), which was hosted at the Prairie Grove Battlefield State Park.  The park is a property owned by the State of Arkansas.  Various vendors displayed arts and crafts for purchase and there were several free cultural events and exhibits available at the Fair.  No admission was charged to enter the park or attend the Fair.  While walking along the public walkway to watch a dance competition, Ms. Hunt walked around a marked stump and stepped into an uncovered, unmarked hole in the walkway.  Ms. Hunt fell and suffered severe injuries to her ankle.

    Plaintiffs filed a complaint[1] alleging both negligence and breach of contract, with the latter claim stemming from Defendant's agreement with the State of Arkansas for use of the property.

---

[1] The complaint alleges both Plaintiffs have a claim for negligence and breach of contract. However, only Ms. Hunt can bring these claims.  Mr. Hunt's presence as a plaintiff is based on a loss of consortium claim and is derivative of Ms. Hunt's claims.

1

Defendant argues that it is immune from liability for negligence under the Arkansas Recreational Use Statute ("ARUS") and Ms. Hunt was not a third-party beneficiary to Defendant's contract with the State and therefore has no standing to bring a breach of contract claim.

## II.     Legal Standard

In ruling on a motion to dismiss, the Court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party." *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012) (quoting *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000)). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Those alleged facts must be specific enough "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of the cause of action will not do." *Id.*  Where the facts alleged, taken as true, "raise a reasonable expectation that discovery will reveal evidence of illegal [activity]," the Court should deny a motion to dismiss. *Id.* at 556.

## III.    Discussion

### A.      The Negligence Claim

"The purpose of [the ARUS] is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes." Ark. Code Ann. § 18-11-301 (1965).  Under the ARUS "an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational

purposes or to give any warning of a dangerous condition, use, structure, or activity on the premises to persons entering for recreational purposes" unless the owner charges the person to enter the land or maliciously fails to warn of an ultra-hazardous condition. *Id.* at § 304. Further, the owner does not "[a]ssume responsibility for or incur liability for injury to the person or property caused by any natural or artificial condition, structure, or personal property on the land." *Id.* at § 305. The ARUS defines "owner" as "the possessor of a fee interest, a tenant, lessee, holder of a conservation easement . . . , *occupant, or person in control of the premises*." *Id.* at § 302 (emphasis added).

Plaintiffs argue first that Defendant is not an owner of the land as defined by the ARUS and therefore the ARUS does not excuse Defendant from liability. If this argument is correct, then Defendant does not need the ARUS's immunity from liability because liability cannot attach. Plaintiffs' negligence claim arises under a premises-liability theory. Under Arkansas law, "[i]n premises-liability claims, liability cannot attach to the defendant unless the defendant *owns or occupies* the property that allegedly caused the plaintiff's injury." *Gray v. Marianna Hous. Auth.*, 599 S.W.3d 337, 340 (Ark. App. 2020) (emphasis added). If Defendant did not own or occupy the park sufficiently to fall under the definition of "owner" in the ARUS, as Plaintiffs argue, then Defendant did not own or occupy the park sufficiently to be liable under a theory of premises liability. Conversely, if Defendant owned or occupied the park sufficiently to be liable under a theory of premises liability, Defendant is an owner under the ARUS.

In the alternative Plaintiffs argue that if Defendant is an owner under the ARUS, the statute still does not bar Plaintiffs' claim because the park was not open for a recreational purpose at the time of Michele's injury, but instead was operating as a commercial enterprise. Whether Defendant was making the park available to invitees for a recreational purpose under the ARUS is a legal conclusion, however, and Plaintiffs cannot rely on conclusory pleading that her admission

3

to the Fair was for commercial purposes to evade the ARUS's reach.

Under the ARUS, "'recreational purpose' includes, but is not limited to, . . . [a]ny other activity undertaken for exercise, education, relaxation, or pleasure on land owned by another." Ark. Code Ann. § 18-11-302(7).  The Fair involved the display of arts and crafts by vendors and Ms. Hunt was walking to a dance performance at the time of her injury.  These are recreational purposes, and when Defendant allowed Ms. Hunt to enter the Fair for these purposes, Defendant was making the park available for recreational purposes.  Though the vendors Defendant allowed at the Fair could each individually sell the arts and crafts they displayed, and so themselves had a commercial purpose, this does not render Defendant's otherwise recreational purpose commercial.

The commercial purpose of the vendors and the fact that vendors had to pay Defendant in order to be present do not remove Plaintiffs' case from the ARUS's scope.  Even if the land is serving a recreational purpose, an owner who charges members of the public for the recreational use of the land will not be immune from liability under the ARUS.  Ark. Code Ann. § 18-11-307(2).  This fee must be charged for entry, however.  In *Moss v. United States* the Eighth Circuit stated "the ARUS, by its plain terms, removes immunity only when a fee is charged to enter a particular area."  895 F.3d 1091, 1099 (8th Cir. 2018).  "Fees subsequent to entry . . . do not alter the initial grant of immunity" because they are "not required for 'entrance' to the relevant parcel of land."  *Id.*  The court therefore held the $16 fee campers had to pay to secure a campsite overnight was not a charge when "campers who didn't pay the fee could still access" the area.  *Id.*

Here, as in *Moss*, it is not disputed that patrons could access the park and attend the Fair without paying any entrance fee or making any purchase.  Any decision by patrons to purchase goods from vendors was an optional fee subsequent to entry, and therefore the "charge" exception to the ARUS does not apply here.  The negligence claim against Defendant will be dismissed with

4

prejudice.

### B.     The Breach of Contract Claim

Ms. Hunt alleges that she has standing to sue for breach of contract as an intended third-party beneficiary to the agreement between the Defendant and the State of Arkansas which allowed Defendant to use the state park for the Fair.  This argument stems from a paragraph which required Defendant to "take proper safeguards to prevent any and all injuries to . . . the public" and obtain liability insurance covering the period of the Fair.  (Doc. 14, p. 11).

As an initial matter, "the presumption is that parties contract only for themselves and, thus, a contract will not be construed as having been made for the benefit of a third party unless it clearly appears that such was the intention of the parties." *Elsner v. Farmers Ins. Grp., Inc.*, 220 S.W.3d 633, 635 (Ark. 2005).  "If a contract is made for the benefit of a third party, then it is actionable by such third party if there is substantial evidence of a clear intention to benefit that third party." *Id.*

In *Cherry v. Tanda, Inc.* the Supreme Court of Arkansas held that the plaintiff did not have standing to bring a claim for breach of contract based on an indemnity provision and an agreement to carry liability insurance contained in a contract between the defendant and a third party.  940 S.W.2d 457, 461 (Ark. 1997).  In *Cherry* the plaintiff argued that he was "a third-party beneficiary to the indemnity contract between [the defendant] and the City because the language clearly contemplate[d] the payment of damages for injuries to the [defendant's] employees, such as himself." *Id.* at 461.  The Court rejected this argument and held that the plaintiff was "merely an incidental, and not intended, third-party beneficiary to the indemnity contract" and therefore had no standing to bring a breach of contract claim. *Id.* at 461.

Here, as in *Cherry*, there is not substantial evidence that the parties to the contract had a

clear intention to benefit patrons of the Fair when it was agreed that Defendant would carry liability insurance. Ms. Hunt is at most an incidental and not an intended beneficiary of the agreement and has no standing to bring a breach of contract claim. The breach of the contract claim will be dismissed with prejudice.

### IV. Conclusion

IT IS THEREFORE ORDERED that Defendant's motion (Doc. 11) to dismiss for failure to state a claim is GRANTED and this case is DISMISSED WITH PREJUDICE. Judgment will be entered separately.

IT IS SO ORDERED this 7th day of September, 2021.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE